# In the United States Court of Federal Claims

No. 18-1769C
(Filed: December 31, 2019)

* * * * * * * * * * * * * * * * * * * * * * * * *
\*
PHILLIP BRUTON,                          \*
                                         \*
        Plaintiff,                       \*
                                         \*
v.                                       \*
                                         \*
THE UNITED STATES,                       \*
                                         \*
        Defendant.                       \*
                                         \*
* * * * * * * * * * * * * * * * * * * * * * * * *

## ORDER OF DISMISSAL

**WILLIAMS**, Senior Judge.

This matter comes before the Court on Defendant's motion to dismiss for lack of subject-matter jurisdiction. Plaintiff pro se, Phillip Bruton, claims that the President failed to comply with 5 U.S.C. §§ 5303 and 5304 (2012) by implementing a lower Cost of Living Adjustment (COLA) and lower locality pay for federal employees than the amount authorized by statute in years 2014 through 2018. Claiming that the President did not consider all of the required economic indicators called for in §§ 5303(b)(2) and 5304(a)(2)(B), Plaintiff argues that the President's alternative payment plans were invalid and asks the Court to establish COLAs under the statutory formula and increase locality pay for 2014 through 2018.[1]

Defendant argues that the Court lacks jurisdiction over Plaintiff's claims under §§ 5303 and 5304, as Plaintiff does not seek relief under money-mandating statutes, and the Court lacks jurisdiction to entertain a claim that the President abused his discretion in implementing these statutes.

The Court finds that while Sections 5303 and 5304 are money-mandating statutes, the Court lacks jurisdiction over Plaintiff's claims challenging the President's determinations under

---

[1] Plaintiff also alleges that the President violated the Fifth Amendment each time he implemented an alternative payment plan due to his "repeated arbitrary and capricious decisions," but the Court lacks jurisdiction over this claim. The Due Process Clause of the Fifth Amendment is not money-mandating. Baber v. United States, 121 Fed. Cl. 807, 814 (Fed. Cl. 2015).

those statutes. Although Plaintiff characterizes his claims against the President as "wage disputes" arising under the Tucker Act, these are not standard Tucker Act claims. Rather, Plaintiff challenges the President's across-the-board determinations in adjusting federal employee pay and asks the Court to substitute its own "past and future" pay adjustments in lieu of the President's determinations. This Court lacks authority to fashion such equitable relief. As such, Defendant's motion to dismiss this action is granted.

## **Background**[2]

Plaintiff has worked for the federal government since 2001. The General Schedule (GS) sets the "annual rates of basic pay" for a subset of federal employees. 5 U.S.C. § 5332(a)(2). Plaintiff is one such employee. In addition to establishing a basic pay rate, the GS calls for annual adjustments "in accordance with section 5303." § 5332(a)(2).

5 U.S.C. § 5303(a) provides:

Effective as of the first day of the first applicable pay period beginning on or after January 1 of each calendar year, the rates of basic pay for each statutory pay system shall be increased by the percentage (rounded to the nearest one-tenth of 1 percent) equal to one-half of 1 percentage point less than the percentage by which the ECI [Employment Cost Index] for the base quarter of the year before the preceding calendar year exceeds the ECI for the base quarter of the second year before the preceding calendar year (if at all).

Courts have characterized this provision as calling for a COLA. See, e.g., Athey v. United States, 115 Fed. Cl. 739, 746 (2014); Beer v. United States, 111 Fed. Cl. 592, 601 (2013).

Subsection (b) of Section 5303 allows the President to deviate from the statutory formula if he determines that fully implementing the COLA would be inappropriate "because of national emergency or serious economic conditions affecting the general welfare." § 5303(b)(1). The statute specifies the "pertinent economic measures" the President must consider before he may deviate from the statutory formula. § 5303(b)(2). These measures include—but are not limited to—"the Indexes of Leading Economic Indicators, the Gross National Product, the unemployment rate, the budget deficit, the Consumer Price Index, the Producer Price Index, the Employment Cost Index, and the Implicit Price Deflator for Personal Consumption Expenditures." Id.

If, after considering these factors, the President finds that fully implementing the COLA would be "inappropriate," the President "shall" write a letter to Congress announcing his decision and explaining his reasoning and adjust pay rates on the same date that the statutory COLA would have taken effect. § 5303(b)(1). The President must also address his decision's impact on "the Government's ability to recruit and retain well-qualified employees" in his Congressional report. § 5303(b)(3).

GS employees are entitled to another form of wage adjustment, known as "locality-based comparability payments" or "locality pay." § 5304. Plaintiff claims to work "within a designated locality," entitling him to locality pay. Am. Compl. ¶ 1. In order to identify and reduce pay disparities among federal employees living across the nation, "[c]omparability payments shall be

---

[2] This background is derived from Plaintiff's complaint and exhibits to his motion papers.

2

payable within each locality determined to have a pay disparity [between federal and private sector salaries] greater than 5 percent." § 5304(a)(1). Each year, the President "shall" direct an agent to prepare and submit an annual report, consider his agent's report, "provide for or adjust" comparability payments, and announce his decision to Congress. § 5304(d)(1)-(3). Under a separate but related statute, the President has the authority to issue an alternative pay plan upon finding that an increase in the percentage of locality pay would be "inappropriate" because of "national emergency or serious economic conditions affecting the general welfare." 5 U.S.C § 5304a (2012).

In each of the years in dispute, the President cited his authority under § 5303(b) to deviate from the statutory formula, announcing a reduced COLA and a lower increase in locality pay for GS employees. Pl.'s Exs. 1-5.

In 2013 and 2014, President Obama wrote to Congress announcing an "alternative plan for pay increases" for GS employees in 2014 and 2015. Pl.'s Exs. 4-5. Under this plan, across-the-board pay increased by one percent and locality pay percentages remained at the prior year levels. Id. In both years, President Obama justified his alternative plans by stating that it was necessary to "keep our Nation on a sustainable fiscal course" and that his decision would not "materially affect the Federal Government's ability to attract and retain a well-qualified Federal workforce." Id.

In an August 28, 2015 letter to Congress, President Obama again declined to fully implement the COLA prescribed by § 5303(a). Pl.'s Ex. 3. In 2016, across-the-board pay increased by one percent, and locality payments were limited "so that the total combined cost of the 1.0 percent across-the-board base pay increase and the varying locality pay increases [would] be 1.3 percent of basic payroll." Id. This time, President Obama found that fully implementing a COLA would be "inappropriate" because of a "national emergency or serious economic conditions affecting the general welfare," citing § 5303(b)(1). President Obama concluded that "[t]hese decisions [would] not materially affect our ability to attract and retain a well-qualified Federal workforce." Id.

On August 31, 2016, President Obama wrote a letter to Congress that mirrored his 2015 letter. Pl.'s Ex. 2. While across-the-board pay increased at the same rate, GS employees in 2017, received a slightly higher increase in locality pay. Id.

On August 31, 2017, President Donald Trump wrote to Congress "transmitting an alternative plan for pay increases." Pl.'s Ex. 1. Across-the-board pay increased by 1.4 percent and locality pay increased by an "average [of] 0.5 percent." Id. President Trump found that these adjustments were necessary to "put our Nation on a sustainable fiscal course." Id. President Trump elaborated on the rationale for his decision, stating that a $26 billion pay increase calculated by the statutory formula was unwarranted, and that "Federal agency budgets could not accommodate such an increase while still maintaining support for key Federal priorities such as those that advance the safety and security of the American people." Id. The President also found that "[t]hese decisions [would] not materially affect our ability to attract and retain a well-qualified Federal workforce." Id.

## Discussion

### Subject-Matter Jurisdiction

The Court assumes all factual allegations to be true and construes the complaint in a manner most favorable to the plaintiff when ruling on a motion to dismiss pursuant to Rule 12(b)(1). Pennington Seed, Inc. v. Produce Exch. No. 299, 457 F.3d 1334, 1338 (Fed. Cir. 2006). Plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). If the Court finds that it lacks subject-matter jurisdiction, the Court must dismiss the action. Adair v. United States, 497 F.3d 1244, 1251 (Fed. Cir. 2007).

Pleadings submitted by pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers." Naskar v. United States, 82 Fed. Cl. 319, 320 (2008) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). Pro se litigants still bear the burden of establishing the Court's jurisdiction and must do so by a preponderance of the evidence. Reynolds, 846 F.2d at 748; Tindle v. United States, 56 Fed. Cl. 337, 341 (2003).

The Tucker Act grants this Court jurisdiction to hear claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491 (a)(1) (2012). The Tucker Act is a jurisdictional statute, not a money-mandating statute. United States v. Testan, 424 U.S. 392, 398 (1976). Thus, a plaintiff must identify a money-mandating source separate from the Tucker Act to establish jurisdiction. Id. at 400. A statute is money-mandating if it "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." Id. (quoting Eastport S.S. Corp. v. United States, 178 Ct. Cl. 599, 607 (1967)).

### 5 U.S.C. §§ 5303 and 5304 Are Money-Mandating Statutes and Can Provide a Basis for Jurisdiction under the Tucker Act.

Defendant argues that the Court lacks jurisdiction over Plaintiff's COLA claim because 5 U.S.C. § 5303 is not money-mandating. Specifically, Defendant contends that Section 5303 is not money-mandating because "it grants the President complete discretion to set pay increases." Mot. to Dismiss 7. Plaintiff argues that Section 5303's repeated use of the word "shall" renders the statute money-mandating, citing Agwiak v. United States, 347 F.3d 1375 (Fed. Cir. 2003). Resp. to Def.'s Mot. to Dismiss 2.

General Schedule (GS) employees are paid under a statutory pay system, and Section 5332(a) of Title 5 establishes the pay schedule for GS employees. The United States Court of Appeals for the Federal Circuit has found that the GS provides federal employees with a cause of action under the Tucker Act "if such compensation [is] wrongly withheld." United States v. Connolly, 716 F.2d 882, 887 (Fed. Cir. 1983). The statute establishing the GS calls for basic pay rates to be adjusted "in accordance with section 5303." § 5332(a)(2).

Section 5303 provides, in relevant part:

Effective as of the first day of the first applicable pay period beginning on or after January 1 of each calendar year, the rates of basic pay for each statutory pay system

4

shall be increased by [an amount calculated according to a specific formula based on the Employment Cost Index].

§ 5303(a) (emphasis added). Section 5303(a) can be "fairly interpreted as mandating compensation" because the statute states that the basic pay rate for the GS shall be increased at a specific rate. See Fisher v. United States, 402 F.3d 1167, 1174-75 (Fed. Cir. 2005) (en banc in relevant part); DaVita, Inc. v. United States, 110 Fed. Cl. 71, 82 (2013). "Using the word 'shall' generally renders a provision money-mandating." DaVita, 110 Fed. Cl. at 82 (citing Agwiak, 347 F.3d at 1380, Huston v. United States, 956 F.2d 259, 261-62 (Fed. Cir. 1992), Gray v. United States, 886 F.2d 1305, 1307 (Fed. Cir. 1989)).

Defendant also argues that the Court lacks jurisdiction over claims for locality pay because 5 U.S.C. § 5304 is not money-mandating. Specifically, Defendant contends that Section 5304 is not money-mandating because it "tracks the language of section 5303(b)," granting the President "complete discretion." Mot. to Dismiss 9.

5 U.S.C. § 5304 provides, in relevant part:

Comparability payments shall be payable within each locality determined to have a pay disparity greater than 5 percent. . . . [T]he amount of the comparability payments payable . . . shall be computed using such percentage as the President determines . . . Comparability payments under this subsection . . . shall take effect . . . on the first day of the first applicable pay period[.]

§ 5304(a)(1), 5304(a)(3), 5304(h)(3)(B) (emphasis added). Section 5304 can be "fairly interpreted as mandating compensation" for a GS employee entitled to locality pay because the statute mandates that payment shall be made within each locality determined to have a pay disparity greater than 5 percent. See Fisher, 402 F.3d at 1174-75; DaVita, 110 Fed. Cl. at 82.

While the President has discretion to determine the amount of both COLAs and locality payments, because that discretion is not unfettered, the statutes are money-mandating. See Bradley v. United States, 870 F.2d 1578, 1580 (Fed. Cir. 1989). As the Federal Circuit found in Bradley, where a statute confers broad discretion to an agency in adjusting pay rates, "[i]nasmuch as discretion is not unlimited, the statute must be deemed to be a pay-mandating statute." Id.

**The Court Does Not Have Jurisdiction to Set Aside The President's Across-The-Board Determinations Under §§ 5303 and 5304.**

Plaintiff characterizes his claims as typical "wage disputes" but asks the Court to set aside the President's COLA and locality pay determinations and substitute different "past and future" pay adjustments. As such, Plaintiff seeks broad and far-reaching declaratory and injunctive relief, as a necessary predicate to any monetary relief. Here, as in Bowen v. Massachusetts, 487 U.S. 879, 905, 909 (1988), mandating payment to the Plaintiff would be a "mere by-product" of the Court's primary function of reviewing the Defendant's interpretation of federal law and potentially fashioning equitable relief. As the Bowen Court recognized, the authority to grant equitable relief accompanied by incidental monetary relief is outside the purview of the Court of Federal Claims. In sum, the Court lacks jurisdiction to determine whether the President violated 5 U.S.C. §§ 5303 and 5304 and lacks authority to set aside the President's determinations and enjoin the President from implementing his alternative payment plans.

## Conclusion

Defendant's motion to dismiss this action is **GRANTED**.

*Mary Ellen Coster Williams*
**MARY ELLEN COSTER WILLIAMS**
Senior Judge